# COMPOSITE EXHIBIT A

HOME    ONLINE SERVICES    COURT SERVICES    RECORDS    FEES    CLERK TO THE BOARD    USEFUL LINKS    HOW DO I....

-->

### Leon County Clerk of the Circuit Court and Comptroller
### Court Case Search

Full Case View 🕐                            **Print Page**



37 2021 CA 000916 - DOUGHERTY, BENJAMIN vs AERIE PHARMACEUTICALS INC

| Party Status | Party | Party Code | Attorney | Attorney Status |
|---|---|---|---|---|
| | AERIE PHARMACEUTICALS INC , | DEFENDANT | PRO SE | ACTIVE |
| | DOUGHERTY, BENJAMIN | PLAINTIFF | MARIE A MATTOX | ACTIVE |

Top of Page

| Action Dscr | Open/Reopen Status | Open/Reopen Date | Disposition | Disposition Date | Judge |
|---|---|---|---|---|---|
| OTHER DISCRIMINATION | OPEN | 5/19/2021 12:27:49 PM | | | SMITH |

Top of Page

| Charge # | Action Code | Description | Plea Date | Plea | Decision Date | Court Action | Charge Disposition | Citation |
|---|---|---|---|---|---|---|---|---|

Top of Page

| | Last Name | First Name | Judges Appearing on Case | Date Assigned | | Source |
|---|---|---|---|---|---|---|
| SMITH | | J | | 5/21/2021 11:41:06 AM | BM | |

Top of Page

Viewable On Request Statuses

| Viewable on Request Documents | e-Certify Documents |
|---|---|

| Docket Table Headers Are Sortable. Click For Ascending, Again For Descending Order |
|---|
| Source Table Abbreviations: BM = Benchmark; JIS = Justice Informations System |

| Docket Date | CCISSeqNbr | Docket Code | ECertify | Docket Text | OR Book | OR Page | Source |
|---|---|---|---|---|---|---|---|
| 5/19/2021 | 2 | CCS 📒 | ☐ «Req $ | CIVIL COVER SHEET | | | BM |
| 5/19/2021 | 3 | COMP_CA 📒 | ☐ «Req $ | COMPLAINT | | | BM |
| 5/19/2021 | 4 | SUIS 📒 | ☐ «Req $ | SUMMONS ISSUED | | | BM |
| 5/21/2021 | 1 | a002 | | JUDGE SMITH, J LAYNE: ASSIGNED | | | BM |
| 5/21/2021 | 5 | RECEIPT 📒 | ☐ «Req $ | PAYMENT $410.00 RECEIPT #1571906 | | | BM |
| 5/26/2021 | 6 | UOCC 📒 | | UNIFORM ORDER FOR ACTIVE, DIFFERENTIAL CIVIL CASE MANAGEMENT | | | BM |
| 6/14/2021 | 7 | ROSE 📒 | ☐ «Req $ | RETURN OF SERVICE EXECUTED - AERIE PHARMACEUTICALS | | | BM |

Top of Page

Microsoft OLE DB Provider for ODBC Drivers error '80040e37'

[Microsoft][ODBC SQL Server Driver][SQL Server]Cannot drop the table '#tmp_events', because it does not exist or you do not have permission.

/public/online_services/search_courts/subsystem/html_routines.asp, line 112

**FORM 1.997.    CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

---

**I.    CASE STYLE**

IN THE CIRCUIT COURT OF THE <u>SECOND</u>  JUDICIAL CIRCUIT,
IN AND FOR <u>LEON</u>  COUNTY, FLORIDA

<u>BENJAMIN DOUGHERTY</u>
Plaintiff

Case # __2021 CA 000916__

Judge _____

vs.

<u>AERIE PHARMACEUTICALS INC</u>
Defendant

---

**II.    AMOUNT OF CLAIM**

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐  $8,000 or less
☐  $8,001 - $30,000
☐  $30,001- $50,000
☐  $50,001- $75,000
☐  $75,001 - $100,000
☒  over $100,000.00

**III.    TYPE OF CASE**      (If the case fits more than one type of case,   select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

**CIRCUIT CIVIL**

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence—other
        ☐ Business governance
        ☐ Business torts
        ☐ Environmental/Toxic tort
        ☐ Third party indemnification
        ☐ Construction defect
        ☐ Mass tort
        ☐ Negligent security
        ☐ Nursing home negligence
        ☐ Premises liability—commercial
        ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
        ☐ Commercial foreclosure
        ☐ Homestead residential foreclosure
        ☐ Non-homestead residential foreclosure
        ☐ Other real property actions

☐ Professional malpractice
        ☐ Malpractice—business
        ☐ Malpractice—medical
        ☐ Malpractice—other professional
☒ Other
        ☐ Antitrust/Trade regulation
        ☐ Business transactions
        ☐ Constitutional challenge—statute or ordinance
        ☐ Constitutional challenge—proposed amendment
        ☐ Corporate trusts
        ☒ Discrimination—employment or other
        ☐ Insurance claims
        ☐ Intellectual property
        ☐ Libel/Slander
        ☐ Shareholder derivative action
        ☐ Securities litigation
        ☐ Trade secrets
        ☐ Trust litigation

**COUNTY CIVIL**

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

☐ Replevins
☐ Evictions
    ☐ Residential Evictions
    ☐ Non-residential Evictions
☐ Other civil (non-monetary)

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

**IV.     REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☒ Nonmonetary declaratory or injunctive relief;
☒ Punitive

**V.      NUMBER OF CAUSES OF ACTION:** [   ]
(Specify)

  <u>1</u>

**VI.     IS THIS CASE A CLASS ACTION LAWSUIT?**
    ☐ yes
    ☒ no

**VII.    HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
    ☒ no
    ☐ yes If "yes," list all related cases by name, case number, and court.

**VIII.   IS JURY TRIAL DEMANDED IN COMPLAINT?**
    ☒ yes
    ☐ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: <u>s/ Marie A Mattox</u>        Fla. Bar # <u>739685</u>
        Attorney or party             (Bar # if attorney)

<u>Marie A Mattox</u>        <u>05/19/2021</u>
  (type or print name)        Date

IN THE CIRCUIT COURT OF THE
SECOND JUDICIAL CIRCUIT, IN AND
FOR LEON COUNTY, FLORIDA

**BENJAMIN DOUGHERTY,**

      **Plaintiff,**

v.

**AERIE PHARMACEUTICALS, INC.,**

      **Defendant.**

_____/

**CASE NO.: 21-CA-** 2021 CA 000916
**FLA BAR NO.: 0739685**

## COMPLAINT

Plaintiff, BENJAMIN DOUGHERTY, hereby sues Defendant, AERIE

PHARMACEUTICALS, INC., and alleges:

### NATURE OF THE ACTION

1.     This is an action brought under Chapter 448, Florida Statutes.

2.     This action involves claims which are, individually, in excess of Thirty Thousand

Dollars ($30,000.00), exclusive of costs and interest.

### THE PARTIES

3.     At all times pertinent hereto, Plaintiff, BENJAMIN DOUGHERTY, has been a

resident of the State of Florida and was employed by Defendant. Plaintiff is a protected

whistleblower due to his objecting to and/or refusing to participate in practices of Defendant that

were in actual or suspected violation of one or more laws, rules or regulations. Plaintiff was

retaliated against after said reporting and/or objections.

4.     At all times pertinent hereto, Defendant, AERIE PHARMACEUTICALS, INC.,

has been organized and existing under the laws of the State of Florida. At all times pertinent to this

action, Defendant has been an "employer" as that term is used under the applicable laws identified above. Defendant was Plaintiff's employer as it relates to these claims.

## CONDITIONS PRECEDENT

5.      Plaintiff has satisfied all conditions precedent to bringing this action, if any.

## STATEMENT OF THE ULTIMATE FACTS

6.      Plaintiff, a protected whistleblower, began his employment with Defendant on or about March 12, 2018. He held the position of Territory Sales Manager at the time of his wrongful termination on March 5, 2020.

7.      Despite his stellar work performance during his employment with Defendant, Plaintiff has been retaliated against because he reported Defendant's unlawful activities.

8.      The retaliation came at the hands of specifically but not limited to District Sales Manager (DSM) Joe Bryant, Regional Sales Manager (RSM) Maria Zanardo, Vice President of Human Resources (HR VP) Karisma Sharma, and Vice President of Sales (Sales VP) Evan Hockman.

9.      Defendant employs over 200 people throughout multiple states providing services in the healthcare industry to patients. As a Territory Manager, Plaintiff had a rigorous work schedule, at times, consisting of fifty plus (50+) hour work weeks.

10.     Plaintiff worked for the company with the utmost drive and loyalty, in fact, prior to his reporting of and objections to Defendants violation of one or more laws, rules, or regulations, Plaintiff was the top sales rep on his team and district in 2019 which was reflected by the glowing comments in his 2019 Year End Review. Plaintiff even earned an award for two consecutive quarters. At the beginning of 2020, he was ranked fourth in the entire company. That all changed in late January 2020.

11.     On January 28, 2020, Plaintiff objected to and complained about Defendant's illicit practices to his supervisor, DSM Bryant.

12.     Specifically, and without limitation, Plaintiff objected to and reported that Defendant's coupon/voucher program was contrary to the laws regulating Medicare administration and constituted fraud. Aerie produced a card for commercial patients which contained a health assistance number on the back which when called would direct them to an agent of Aerie. This number is intended for commercial patients to obtain assistance in fulfilling their prescriptions. The agent would receive calls from pharmacies and physicians seeking to provide or obtain additional benefits to their Medicare patients. The Defendant's coupon/voucher program was intended for the exclusive use of commercial patients, When the agent of Aerie would receive calls from parties seeking benefits for Medicare patients, they were supposed to inform them that the benefits were for commercial patients only. On information and belief, in some instances, Aerie's agent would not do this, instead they would direct and instruct physicians and pharmacies on how to manipulate their requests to provide additional benefits to Medicare patients. Based on information and belief, Aerie's leadership encouraged sales representatives like the Plaintiff, to get prescriptions sent to certain specialty pharmacies that were more willing to participate in this fraud.

13.     Medicare patients are not considered commercial patients.

14.     These practices included but were not limited to the use of specialty pharmacies, paying doctors and representatives to refer to these pharmacies, and specifically instructing its employees on what to say in order to obtain automatic prior authorizations for Tricare benefits. DSM Bryant himself had instructed clients on the way in which to receive automatic authorizations for Tricare benefits, an action that runs directly contrary to the law.

3

15.     In an attempt to boost company profits, Aerie emailed its employees instructions on how to subvert and bypass the prior authorization process and unlawfully obtained excess benefits from the Tricare Healthcare Plan as a result.

16.     One phrase Defendant specifically instructed its employees to use was "Patient requires Rho Kinase inhibitor."

17.     Plaintiff also refused to participate in Defendant's Tech Programs because he believed Defendant was conducting illegal activity which he reported to DSM Bryant. Specifically, Plaintiff was concerned of a Pay to Play scheme being involved in the execution of the Tech Program. Defendant's Tech Program involves inviting physician technician staff who cannot write prescriptions for Aerie products to expensive meals that they financially would not be able to afford on their average wage/salary. Defendant would inform the technicians about the products and how to get the prior authorizations approved for those products so that Aerie can profit from the technician's physician prescriptions. By way of example, within the Defendant's company, it is widely known that technicians working for physicians prescribing Aerie products are more likely to complete prior authorizations after participating in a Tech program.

18.     Bryant was not pleased that Plaintiff was not willing to participate or promote a Tech Program based on how it was conducted. On information and belief, records should indicate that Plaintiff was the only representative in his district not to conduct a Tech Program with DSM Bryant. This was due to his concerns of illegal activity.

19.     Plaintiff witnessed a Tech Program months earlier with a previous manager sponsored and paid for by Defendant.  During that program, Defendant instructed office staff how to get prior authorizations approved. Defendant also logged onto offices CoverMyMeds and ParX

accounts and assisted in prior authorizations while viewing patient information which is in violations of HIPPA laws and guidelines.

20.     DSM Bryant conducted his programs in a similar fashion.  In fact, Bryant and Defendant's HR Department instructed employees who had participated in recent Tech Programs to falsify their records and label the program as Health Care Provider (HCP) Meal even though no HCP was present.  These were lavish meals in excess of $120 per person with no HCP present for the sole purpose of helping offices with prior authorizations.  These meetings are not only unethical but illegal when conducted in the way Defendant promoted them, which Plaintiff objected.

21.     Plaintiff grew concerned about the Speaker Program operated by Aerie functionally operating as a Pay for Play scheme. The Speaker program invited physicians to speak and promote Aerie products to other physicians. On information and belief, records should indicate that the speaking physicians were paid high sums money for this scheme. In some cases, speaking physicians would be compensated for presentations they did not give, or gave with no person in attendance. Records in the Plaintiff and Defendant's possession indicate that at least one paid speaking physician, confirmed in writing to Plaintiff, that the Defendant instructed him to direct patients to the specific pharmacies engaging in activities outlined in Paragraph 12 above. Plaintiff had zero paid physicians in his territory.

22.     Plaintiff also objected to illegal activity conducted by Defendant's market access team.  On multiple occasions, the Defendant's Market Access representative flew into the Plaintiff's territory and solicited physicians to write letters to Government Agencies and Insurance Companies to try and improve their medications tier status, knowing their requests were in violation of the law.  This was a common practice in the Defendant's district and region as multiple

physicians can attest.  Many physicians did in fact write these letters unlawfully requested by the Market Access Team.

23.     Plaintiff's objections and refusal to participate were relayed to RSM Zanardo and thereafter, Defendant's hostility against him intensified. Defendant no longer treated Plaintiff as the star employee he had been for so many years and began to target him for termination.

24.     On February 19, 2020, Sales VP Hockman hosted a conference call which Plaintiff attended discussing the new bonus plan for the quarter despite the quarter being half over. This change to the new plan would cost Plaintiff at least $10,000. Plaintiff relayed his concerns that the plan had been rolled out so late in the quarter and that Defendant had a custom and practice of sticking to the original plan if the new plan was not timely announced.

25.     Just after the call, DSM Bryant texted Plaintiff telling him that he had put Bryant in a difficult position and that RSM Zanardo was extremely displeased.

26.     That same day, Defendant cancelled Plaintiff's hotel reservation for a company training and development meeting he was supposed to attend in Orlando without reason.

27.     DSM Bryant also broke his habit of riding along with his representatives when he skipped Plaintiff's rotation on at least one occasion.

28.     Plaintiff began experiencing immense anxiety and depression because of the continued harassment he received at the hands of DSM Bryant and RSM Zanardo.

29.     On February 23, 2020, Plaintiff had to be admitted to the emergency room for heart palpitations and high blood pressure from the stress of Defendant's actions against him.

30.     On or around February 24, 2020 Plaintiff sent an e-mail to HR VP Sharma complaining of the unlawful hostile work environment he experienced at the hands of Bryant and Zanardo. No one in HR ever got back to Plaintiff to address his concerns. The following week, the

Defendant sent out an email containing outdated compliance training documents dated January 2020, which referenced and addressed many of the concerns raised by Plaintiff. At this point in time, it was March 2020. On or around a week following the distribution of the training materials, Plaintiff was fired.

31.    In the termination letter dated March 5, 2020, Defendant made numerous misrepresentations in order to attempt to justify Plaintiff's termination. Defendants' allegations of improper expense reports submissions were baseless as all of Plaintiff's expense reports had been approved without issue. Even if Defendant's misrepresentations and allegations were not pretextual, numerous employees who have not reported Defendant's unlawful behavior have submitted incorrect expense reports and been given the opportunity to correct them without the same consequence. It is on information and belief that DSM Bryant himself had instructed numerous representatives under his charge how to manipulate an expense report to get it approved for payment. Defendant's failure to extend the same opportunity to Plaintiff represents further retaliation for reporting Defendant's unlawful behavior.

32.    In the letter, Defendant also misrepresented the purpose of the Orlando meeting with Plaintiff, falsely claiming that it was to review findings of an investigation into the contrived allegations regarding expense reports and to terminate Plaintiff. This is directly contradicted by texts sent from HR VP Sharma to Plaintiff which state Defendant had wanted him to come to the meeting for training and development.

33.    Defendant failed to make any offer of progressive discipline for Plaintiff's alleged transgression despite his years of dedicated service and top-notch performance.

34.    Plaintiff was a dedicated sales representative for Defendant. He reported actual or suspected illegal activity within Defendant and he was fired as a result thereof.  He was fired

shortly after telling HR of the illegal activity within Defendant. Then Defendant tried to cover it up by manufacturing a story of expense report issues which even if true, would not have merited discipline, let alone termination.

35.     Plaintiff has retained the undersigned to represent his interests in this cause and is obligated to pay a fee for these services.  Defendant should be made to pay said fee under the laws referenced above.

## COUNT I
## PRIVATE WHISTLEBLOWER RETALIATION

36.     Paragraphs 1 through 35 are incorporated herein by reference.

37.     This is an action brought under §448.101, et seq., Florida Statutes.

38.     As set forth in greater detail above, during the course of Plaintiff's employment, Plaintiff objected to certain practices of Defendant that were in actual or suspected violation of state and/or federal laws.

39.     As a result of Plaintiff' objections, he was fired.  Plaintiff was subjected to contrived allegations, frivolous warnings or write ups, suspension, relocation, isolation, and/ or termination after Plaintiff objected to and/or refused to participate in practices of Defendant that were in actual or suspected violation of one or more laws, rules or regulations.

40.     Plaintiff was terminated because he engaged in protected behavior. Specifically, Plaintiff objected to, or refused to participate in, any activity, policy, or practice of Defendant which is in actual or suspected violation of a law, rule, or regulation and/or reported the violation and gave Defendant an opportunity to correct the problem. Instead of correcting the problem, it got worse, and Plaintiff was fired for said reporting.

41.     The disclosures made by Plaintiff are protected under §448.102, Florida Statutes.

42.     As a direct and proximate cause of Plaintiff's participation in the Whistle Blowing activities identified herein, Plaintiff has been damaged, which damages include but are not limited to lost wages and other tangible and intangible damages and every other kind of damage allowed by law. Plaintiff has also suffered emotional pain and suffering damages and other intangible damages that continue today. Plaintiff is entitled to injunctive/equitable relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant for the following:

(a)     that process issue and this Court take jurisdiction over this case;

(b)     that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c)     enter judgment against Defendant and for Plaintiff awarding all legally-available general and compensatory damages and economic loss to Plaintiff from Defendant for Defendant's violations of law enumerated herein;

(d)     enter judgment against Defendant and for Plaintiff awarding all legally-available damages for emotional pain and suffering to Plaintiff from Defendant for Defendant's violations of law enumerated herein.

(e)     enter judgment against Defendant and for Plaintiff permanently enjoining Defendant from future violations of law enumerated herein;

(f)     enter judgment against Defendant and for Plaintiff awarding Plaintiff attorney's fees and costs;

(g)     award Plaintiff interest where appropriate; and

(h)    grant such other further relief as being just and proper under the circumstances, including but not limited to reinstatement.

## **<u>DEMAND FOR TRIAL BY JURY</u>**

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

DATED this 18th day of May 2021

Respectfully submitted:

/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P.A.
203 N. Gadsden Street
Tallahassee, FL  32301
Primary Email:  marie@mattoxlaw.com
Secondary Email:  marlene@mattoxlaw.com
(850) 383-4800 (telephone)
(850) 383-4801 (facsimile)

THOMAS L. DICKENS, III, ESQ.
Florida Bar No.: 063687
Morgan & Morgan, P.A.
20 N. Orange Avenue
Suite 1600
Orlando, FL 32801
Telephone: (407) 420-1414
Facsimile:  (407) 204-2208
Primary Email:  tdickens@forthepeople.com
Secondary Email:  mfermaint@forthepeople.com

**ATTORNEYS FOR PLAINTIFF**

10

IN THE CIRCUIT COURT OF THE
SECOND JUDICIAL CIRCUIT, IN AND
FOR LEON COUNTY, FLORIDA

**BENJAMIN DOUGHERTY,**

CASE NO.: 21-CA-  2021 CA 000916
FLA BAR NO.: 0739685

      **Plaintiff,**

**v.**

**AERIE PHARMACEUTICALS, INC.,**

# SUMMONS

      **Defendant.**

_____/

THE STATE OF FLORIDA:

To Each Sheriff of the State:

      YOU ARE COMMANDED to serve this summons and a copy of the complaint or petition in this action on Defendant:

      **AERIE PHARMACEUTICALS, INC.**
      C/O CT CORPORATION SYSTEM – Registered Agent
      1200 S PINE ISLAND RD
      PLANTATION, FL 33324

      Each defendant is required to serve written defenses to the complaint or petition on **Marie A. Mattox, P. A.,** Plaintiff's attorney, whose address is **203 North Gadsden Street, Tallahassee, FL 32301**, within 20 days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court, either before serve on plaintiff's attorney or immediately thereafter.  If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

      DATED on _____, 2021.

CLERK OF THE CIRCUIT COURT

By: _____  05/21/2021
Deputy Clerk



# LEON COUNTY Receipt of Transaction
## Receipt #    1571906

GWEN MARSHALL
Clerk of Court and Comptroller
LEON COUNTY, FLORIDA

**Received From:**
Marie A. Mattox
203 North Gadsden Street
Tallahassee, FL 32301

**On Behalf Of:**

,

On: 5/21/2021  11:41:09AM
Transaction # 100834385
Cashiered by: L WILLIAMS

CaseNumber  2021 CA 000916

**Judge  J LAYNE SMITH**

**BENJAMIN DOUGHERTY  *VS*  AERIE PHARMACEUTICALS INC**

Comments:

| Fee Description | Fee | Prior Paid | Waived | Due | Paid | Balance |
|---|---|---|---|---|---|---|
| (COMP_CA) COMPLAINT | 400.00 | 0.00 | 0.00 | 400.00 | 400.00 | 0.00 |
| (SUIS) SUMMONS ISSUED | 10.00 | 0.00 | 0.00 | 10.00 | 10.00 | 0.00 |
| **Total:** | **410.00** | **0.00** | **0.00** | **410.00** | **410.00** | **0.00** |
| **Grand Total:** | **410.00** | **0.00** | **0.00** | **410.00** | **410.00** | **0.00** |

**PAYMENTS**

| Payment Type | Reference | | Amount | Refund | Overage | Change | Net Amount |
|---|---|---|---|---|---|---|---|
| CREDIT CARD EFILE | 127099838 | OK | 410.00 | 0.00 | 0.00 | 0.00 | 410.00 |
| | **Payments Total:** | | **410.00** | **0.00** | **0.00** | **0.00** | **410.00** |

IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT
IN AND FOR LEON COUNTY, FLORIDA

BENJAMIN DOUGHERTY,

      Plaintiff,

                                   Case No: 2021 CA 000916

v.

AERIE PHARMACEUTICALS, INC.,

      Defendant.

_____/

## UNIFORM ORDER FOR ACTIVE, DIFFERENTIAL CIVIL CASE MANAGEMENT

      In compliance with Florida Supreme Court directives on active, differential civil case management established in Supreme Court Administrative Order AOSC20-23, Amendment 12, and Second Judicial Circuit Administrative Order 21-04, all parties in the above-styled cause are bound by this Case Management Order.

**Plaintiff shall serve this order on all parties with service of the original complaint. Strict enforcement is required unless good cause is shown for an exception or as otherwise required by law.**

## I. PROJECTED TRIAL DATE

      All **COUNTY COURT Civil cases** are designated **STREAMLINED CASES** with a projected trial date of **360 days** from the date of filing of the complaint.

      All **CIRCUIT COURT Civil cases** for which the complaint **does not demand trial by jury** are designated **STREAMLINED CASES** with a projected trial date of **360 days** from the date of filing of the complaint.

      All **CIRCUIT COURT Civil cases** for which the **complaint demands trial by jury** are **GENERAL CASES** with a projected trial date of **540 days** from the date of filing of the complaint.

**A change in the above designations may be made by the presiding judge on the judge's own initiative or upon motion of any party.** Should any party assert that a civil case should be treated other than designated above, such party shall file a written motion requesting such change and the motion shall be expeditiously resolved by the presiding Judge.

## II. Notice that Cause is at Issue and Firm Trial Date

The parties **must file a *Joint* Notice** that the Cause is at Issue **no later than 15 days after the pleadings are closed**. In the event of a dispute, either party may file a motion and request a hearing to determine if the cause is at issue.

Upon joint notice or judicial determination that the cause is at issue, the Court will schedule a Firm Trial Date consistent with the Projected Trial Date above unless either party requests a different date in their Notice that the Cause is at Issue. Should either party request a Firm Trial Date different than the Projected Trial Date, the Plaintiff shall expeditiously set a case management conference to determine the Firm Trial Date.

## III. Mandatory Deadlines for *Streamlined* Cases

If this case is designated as a STREAMLINED CASE, the following deadlines shall apply and, by directive of the Florida Supreme Court, must be strictly enforced unless good cause is shown for an exception or as otherwise required by law:

120 days after filing:  Service of Complaints
150 days after filing:  Service under any Extension of Time
180 days after filing: Adding New Parties
210 days after filing:  Resolution of Objections to Pleadings and Motions to Dismiss
270 days after filing:  Completion of Fact and Expert Discovery
270 days after filing:  Resolution of Pretrial Motions, including Motions for Summary Judgment

## IV. Mandatory Deadlines for *General* Cases

If this case is designated as a GENERAL CASE, the following deadlines shall apply and, by directive of the Florida Supreme Court, must be strictly enforced unless good cause is shown for an exception or as otherwise required by law:

120 days after filing:  Service of Complaints
180 days after filing:  Service under any Extension of Time

210 days after filing:  Adding New Parties
270 days after filing:  Resolution of Objections to Pleadings and Motions to Dismiss
400 days after filing:  Completion of Fact and Expert Discovery
450 days after filing:  Resolution of Pretrial Motions, including Motions for Summary Judgment

## V. Mediation

All parties must mediate unless excused by court order for good cause shown or as otherwise required by law and in compliance with Rules of Civil Procedure 1.700 - 1.730.

## VI. Noncompliance

**By Order of the Florida Supreme Court, strict, good faith compliance with this Uniform Order for Active, Differential Civil Case Management is required unless good cause is shown for an exception or as otherwise required by law.  These procedures and time standards do not supplant any existing rule, statute, or law.**

**Failure to appear at the pretrial conference or failure to comply with the terms of this order may result in such sanctions as are just and lawful including:  an immediate ex parte hearing and entry of final judgment of default or dismissal, limitation of witnesses or other evidence, striking of claims or defenses, or imposition of attorney fees or costs.**

## VII. Hearings by Audio-Video Technology

During the COVID-19 Public Health Emergency, all hearings other than jury selection and trial ***shall*** be conducted consistent with Florida Supreme Court and Second Circuit Administrative Order by audio-video technology.  Each judge is responsible to establish the process for such audio-video technology hearings by notice of hearing including technology access.

After the conclusion of the COVID-19 Public Health Emergency all hearings other than jury selection and trial ***may*** be conducted by audio-video technology.  Each judge is responsible to establish the process for such audio-video technology hearings by notice of hearing including technology access.

DONE AND ORDERED this 26th day of May, 2021.

J. Layne Smith
Circuit Judge

Copies to Counsel of Record

## SUPPLEMENT TO CIVIL CASE MANAGEMENT ORDER

If, at the time the Uniform Order For Active Differential Civil Case Management ("Order") is filed, service on the Defendant(s) has already been made or process provided to a process server, the Plaintiff may comply with the second (in bold) paragraph of the Order by promptly providing a copy of the Order to the Defendant(s) by U.S. Mail or by Electronic Mail. The Plaintiff shall then file a certificate of service documenting that this Order has been provided to the Defendant(s) in this manner.

# RETURN OF SERVICE

CASE #2021 CA 000916

6/3/2021

PLAINTIFF
**BENJAMIN DOUGHERTY**
VS
DEFENDANT
**AERIE PHARMACEUTICALS, INC.,**

ATTORNEY: MARIE A. MATTOX ESQ
FIRM: MARIE A. MATTOX P.A.

TO:  AERIE PHARMACEUTICALS, INC.,
C/O  CT CORPORATION SYSTEM
1200 SOUTH PINE ISLAND ROAD
PLANTATION FL 33324

We, received this: **SUMMONS / UNIFORM ORDER FOR ACTIVE, DIFFERENTIAL CIVIVIL CASE MANAGEMENT / SUPPLEMENT TO CIVIL CASE MANAGEMENT ORDER / COMPLAINT** On: 6/3/2021  At: **7:30 AM**

This process was served to the above named Corporation/Sole Proprietorship or Individual named, by delivering a true copy of the: **SUMMONS / UNIFORM ORDER FOR ACTIVE, DIFFERENTIAL CIVIVIL CASE MANAGEMENT / SUPPLEMENT TO CIVIL CASE MANAGEMENT ORDER / COMPLAINT**

Type of service is:  **CORPORATE**
Accepted By: **CT CORPORATION SYSTEM ( CONTACT DONNA MOCH)** Title:  **MANAGER**
On: **6/3/2021** At: **11:20 AM**
Comments:

Affiant states upon information and belief that said person is not in the Military Service of the United States as the term defined in either the state or Federal Statues.

I certify that I am of legal age, I have no interest in the above action and I am authorized to serve this process. FS 92.525. Under penalities of perjury. I declare that I have read the forgoing (Document) and that the facts in it are true.

**MARLON MCKIE**
SPECIAL PROCESS SERVER # 1369
BROWARD COUNTY, FLORIDA

PROCESS & RECOVERY SERVICES, INC
3603 MONMOUTH CT.
TALLAHASSEE FL 32308

Our Control # **22655**